## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **DONALD FOSTER**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 11 C 8589 |
| | ) | |
| **MICHAEL J. ASTRUE**, Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Donald Foster ("Foster") seeks judicial review pursuant to the Social Security

Act ("Act"),[1] more specifically Sections 405(g) and 1383(c)(3), of the final decision of

Commissioner of Social Security Michael J. Astrue ("Commissioner") denying

Foster's claim for supplemental security income ("SSI") disability benefits. Both

Foster and Commissioner have moved for summary judgment under

Fed. R. Civ. P. ("Rule") 56. For the reasons stated in this memorandum opinion and

order, Foster's motion is denied, Commissioner's motion is granted and this action

is dismissed.

---

[1] All further statutory references will take the form "Section --," using the Title 42 numbering rather than the Act's internal numbering. All portions of 20 C.F.R. will be cited "Reg. §--." Finally, citations to Foster's memorandum take the form "F. Mem. --" and to Foster's reply memorandum take the form "F. R. Mem. --".

### Procedural Background[2]

Foster filed an application for disability insurance benefits and SSI on October 4, 2006 (R. 10), alleging a disability onset date of March 15, 2006 (id.). Foster's claims were initially denied on January 4, 2007 and denied again upon reconsideration on July 5, 2007 (id.).

After Foster filed a written request for a hearing on July 5, 2007 (id.), a hearing took place before Administrative Law Judge Percival Harmon ("ALJ Harmon") on July 28, 2009. On December 17, 2009 ALJ Harmon found that Foster was not disabled because he could still perform a significant number of jobs in the national economy (R. 7-23). Next the Appeals Council denied Foster's request for review, so that ALJ Harmon's decision became Commissioner's final decision (R. 1-6). Lastly, Foster filed this action on December 2, 2011.

### General Background

Foster was born in December 1967 and was 41 years old on the date ALJ Harmon issued his decision (R. 29, 157). Foster has a high school education and has completed a robotics training program (R. 34). He has previously worked in several jobs, including assembly line worker, delivery person, forklift driver/machine operator, package handler and robotic welder operator/programmer (R. 185, 190).

But Foster has not worked since April 2006 (R. 37). He asserts that he is

---

[2] What follows in the next sections of the text is drawn from the administrative record (cited "R--").

unable to work due to asthma and the presence of polyps in his head and sinus
passages (R. 184).

## Medical Evidence

Dr. Jerome Antony, Foster's treating physician, treated him for a variety of
conditions, including asthma, over the span of more than 10 years (R. 241-44,
274-95). In May 2009 Dr. Antony completed a "Pulmonary Residual Functional
Capacity Questionnaire," reporting that Foster suffered from asthma and often had
wheezing, shortness of breath and asthma attacks (R. 297-300). Dr. Antony stated
that Foster had asthma attacks 2 to 3 times per month and was incapacitated for
approximately 5 to 7 days during an average attack (R. 298). Dr. Antony also stated
that Foster could sit, stand or walk less than 2 hours per day.

Back in December 2006 Dr. M. S. Patil had performed a consultative
evaluation of Foster and diagnosed chronic bronchial asthma and a history of
recurrent nasal polyps (R. 247). Dr. Patil made multiple findings, some regarding
Foster's asthma and some regarding other topics.

Also in December 2006 Dr. Frank Jimenez, a state agency physician, had
reviewed the record evidence and concluded that Foster could lift or carry 50
pounds occasionally and 25 pounds frequently and could sit, stand or walk about 6
hours in an 8 hour day (R. 249-56). Dr. Jimenez also indicated that Foster should
avoid concentrated exposure to fumes, odors, dusts, gases and poor ventilation (R.
253). Dr. Young-Ja Kim -- another state agency physician -- had affirmed Dr.
Jimenez's assessment after reviewing the record evidence in June 2007 (R. 267-69).

## Medical Testimony at the Hearing

Dr. John Cavanagh[3] reviewed the record evidence and testified as a medical expert at the administrative hearing. Dr. Cavanagh confirmed "the presence of bronchial asthma since 1990" (R. 63), but he ultimately concluded that Foster's condition did not meet a listing (R. 64). To support his conclusion Dr. Cavanagh discussed Foster's medical records from Drs. Antony and Patil and noted that Foster had been to the emergency room 23 times in the preceding 11 year period, an average of only two to three visits per year (R. 63). Dr. Cavanagh further noted that despite those "occasional ER visits," there was no record of hospitalization, a pulmonary function test or the need for ambulatory oxygen (id.). Based on the medical records, Dr. Cavanagh concluded that Foster could exert a "medium level of activity" and should avoid "even moderate exposure to respiratory irritants and temperature extremes" (R. 64).

## Foster's Hearing Testimony

Foster offered testimony about his condition and its effects at the administrative hearing. Foster said that he suffers from asthma and polyps in his sinus passages, which cause difficulty in breathing (R. 30). Foster added that although he had not been hospitalized for his asthma in 2008 or 2009, he had received emergency room treatment for the condition (R. 47). When asked about

---

[3] Dr. Cavanagh's name is spelled in a variety of different ways in the hearing transcript, the ALJ decision and the parties' briefs. Although it seems that only the doctor himself knows the correct version, this Court must choose one version -- and it opts to refer to him as "Dr. Cavanagh."

the frequency of his asthma attacks, Foster said that he had them "a lot . . . . maybe three or four times, maybe three times a month, or maybe two times a month that I would actually go to the doctor's" (R. 49), but he added that he would not always go to the doctor in the event of an attack (id.). Foster stated that it took him 4 to 5 days of "relaxing and taking medicine like crazy" to recover from an attack (R. 59). He also discussed his recurrent nasal polyps and the multiple surgeries that have been performed to treat them (R. 46).

According to his testimony, Foster is able to cook but not engage in household chores that require more exertion, nor can he exercise (R. 47-49). His sleep is disrupted frequently when he wakes up to cough, and he frequently coughs to clear his chest, in addition to which he wheezes and has pain and tightness in his chest (R. 49-54). Foster is able to stand for at least 30 minutes, sit for an hour or longer, walk almost a whole block without resting and lift "maybe 15 or 20 pounds" in a job setting (but not repeatedly) (R. 54-55, 58).

Foster further testified that he held multiple jobs over the years in various fields, but none of those jobs involved heavy lifting (R. 38-45). Foster also opined on his most recent job as a meat packer, stating that he had to leave the job after 7 months because he started having asthma attacks while on the job and was asked to leave because his attacks "scared" his employer (R. 39). Though he attempted to give his employer a note from his doctor saying that he needed to be absent from work for "a few days," his employer " had a very low tolerance with attendance" (R. 39). This was not the first time Foster's employment was terminated due to his

asthma and its effects on his attendance: He also testified that he was let go from other jobs for the same reason (R. 40, 43).

## Vocational Expert ("VE") Testimony

At the hearing, the ALJ heard testimony from Vocational Expert Dr. Hamersma ("VE Hamersma").[4] ALJ Harmon asked VE Hamersma whether a hypothetical individual with Foster's age, education and past work experience could perform unskilled work that included (1) occasionally lifting and carrying 50 pounds and frequently lifting and carrying 25 pounds, (2) standing and walking 6 hours in an 8 hour day with customary breaks and (3) sitting 6 hours in an 8 hour day with customary breaks (R. 64). ALJ Harmon also specified that the hypothetical work environment would have no more than moderate exposure to temperature extremes, fumes, odors, dusts, gases, poor ventilation or other pulmonary irritants (id.). In response VE Hamersma testified that while an individual of that description could not perform any of Foster's past jobs, he would be able to perform as a hand packer, a general laborer and an inspector -- jobs that numbered a total of some 15,500 in the regional economy (R. 65).

ALJ Harmon next asked VE Hamersma about an individual who could (1) lift and carry a maximum of 10 pounds and frequently less than 10 pounds, (2) sit 6 of 8 hours in a workday with customary breaks and (3) stand and walk only 4 hours in a workday (R. 66). VE Hamersma answered that such an individual could hold a

---

[4] That appears to be the correct name, even though the hearing transcript refers to the VE as "Dr. Hugh Hamas" (R. 64).

job as a cashier, an "assembly" or a telephone quotation clerk (approximately 16,000 jobs total) (<u>id.</u>).

Finally, ALJ Harmon asked VE Hamersma about the same individual who could (1) sit a little less than 2 hours in an 8 hour day, (2) stand and walk slightly less than 2 hours in an 8 hour day, (3) lift and carry up to 10 pounds, (4) stoop occasionally and (5) crouch and climb only rarely (R. 67). VE Hamersma replied that there would be no jobs available for such an individual (<u>id.</u>). When questioned by Foster's attorney, VE Hamersma also testified that an employee could miss no more than two days per month before being considered unemployable and that there would be no jobs available for an individual with "frequent interruptions in concentration" (R. 67-68).

## ALJ Decision

After considering the record, ALJ Harmon made a series of findings. What follows, though an abbreviated paraphrase, is faithful to the original:

1.  Foster met the insured status requirements through December 31, 2010 (R. 12).

2.  Foster has not engaged in substantial gainful activity since March 15, 2006 (<u>id.</u>).

3.  Foster has two severe impairments: asthma and recurrent nasal polyps (Reg. §404.1520(c) and §416.920(c)) (<u>id.</u>).

4.  Those impairments do not meet or medically equal one of the listed impairments in Reg. §§404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926 (R. 12). Foster's asthma attacks were not frequent enough to equal Listing 3.03A (chronic asthmatic bronchitis) or 3.03B (requiring

physician intervention at least 6 times per year)
(R. 12-13).

5.   Foster's residual functional capacity ("RFC") includes the
     ability to (1) occasionally lift and carry 50 pounds and
     frequently lift and carry 25 pounds, (2) sit 6 hours in an
     8 hour workday and (3) stand and walk 6 hours in an
     8 hour workday (R. 13). Foster is limited by the need to
     avoid even moderate exposure to extreme cold or heat and
     to fumes, odors, dusts, gases and poor ventilation (id.). In
     addition, he is limited to work consisting of unskilled and
     routine tasks (id.).

6.   Foster is unable to perform any past relevant work
     (R. 17).

7.   Considering Foster's age, education, work experience and
     RFC, there are jobs that exist in significant numbers in
     the national economy that Foster can perform (id.).

8.   Foster has not been under a disability from March 15,
     2006 through the date of the decision (R. 18).

## Standard of Review and Applicable Law

In reviewing Commissioner's decision, this Court considers the legal

conclusions de novo (Haynes v. Barnhart, 416 F.3d 621, 626 (7th Cir. 2005)). But

because by contrast factual determinations receive deferential review, courts may

not "reweigh the evidence or substitute [their] own judgment for that of the ALJ"

and will affirm Commissioner's decision if supported by substantial evidence (id.).

Substantial evidence is "such relevant evidence as a reasonable mind might accept

as adequate to support a conclusion" (Richardson v. Perales, 402 U.S. 389, 401

(1971) (internal quotation marks and citations omitted)).

As cases such as Haynes, 416 F.3d at 626 (internal quotation marks and

citations omitted) teach:

> In rendering a decision, the ALJ must build a logical bridge from the evidence to his conclusion [but] need not . . . provide a complete written evaluation of every piece of testimony and evidence.

Hence "[i]f the Commissioner's decision lacks adequate discussion of the issues, it will be remanded" (Villano v. Astrue, 556 F.3d 558, 562 (7th Cir. 2009)). Reversal is also required if the ALJ has committed a legal error, regardless of how much evidence supports his or her determination (Binion on behalf of Binion v. Chater, 108 F.3d 780, 782 (7th Cir. 1997)).

To qualify for benefits a claimant must be "disabled" within the meaning of the Act (Liskowitz v. Astrue, 559 F.3d 736, 739 (7th Cir. 2009), citing Section 423(a)(1)(E)). "Disability" is defined in Section 423(d)(1)(A) as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Claimants must also demonstrate that the disability arose during the period when they were insured (Section 423(a)(1)(A) and (c)(1)).

Social security regulations set forth a sequential five-step inquiry that must be conducted to determine whether a claimant satisfies the disability definition (Liskowitz, 559 F.3d at 740, citing Reg. §§404.1520 and 416.920). Specifically, the ALJ must determine (Dixon v. Massanari, 270 F.3d 1171, 1176 (7th Cir. 2001), citing Reg. § 404.1520):

(1) Whether the claimant is currently employed, (2) whether the

claimant has a severe impairment, (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disability impairment, whether she can perform her past relevant work, and (5) whether the claimant is capable of performing any work in the national economy.

At step five of the analysis the ALJ may use the Medical Vocational Guidelines to determine whether the claimant's exertional limitations prevent him from performing any work (Fast v. Barnhart, 397 F.3d 468, 470 (7th Cir. 2005)).  If however the claimant suffers from both exertional and nonexertional impairments, the Medical Vocational Guidelines are not determinative but rather "provide a framework for consideration" (id. at 471, quoting Reg. Pt. 404, Subpt. P., App. 2 §200.00(e)(2)).

## New Evidence

Before this opinion examines ALJ Harmon's decision, it is necessary to address the new evidence that Foster attempts to introduce in his motion for summary judgment.  In support of his argument that his asthma attacks are more significant than ALJ Harmon credited, Foster cites newly-produced medical records from the years 2010, 2011 and 2012 (F. Mem. Exs. 1-6).[5]  But because the ALJ hearing was held in December 2009, those records were obviously not a part of ALJ Harmon's decision.

---

[5] As Foster did not label the exhibits attached as a group to his motion for summary judgment.  For convenience in reference this Court has labeled them as Exhibits 1 through 6 in the order in which they appear as attachments to Foster's motion.  In like manner, the exhibits attached to Foster's reply are designated as Exhibits 1 through 3.

As a general matter, this Court's review of an ALJ decision is limited to the administrative record. When new evidence is presented, there is a limited provision for remand under 42 U.S.C. §405(g) (often referred to as "sentence six"). Under sentence six <u>Schmidt v. Barnhart</u>, 395 F.3d 737, 741-42 (7th Cir. 2005), internal quotation marks and citations omitted) prescribes:

> A reviewing court may order additional evidence to be taken before the Commissioner upon a showing that there exists new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding. Evidence is "new" if it was not in existence or available to the claimant at the time of the administrative proceeding. New evidence is "material" if there is a reasonable probability that the ALJ would have reached a different conclusion had the evidence been considered. Thus, new evidence is material only if it is relevant to the claimant's condition during the relevant time period encompassed by the disability application under review.

Foster has not expressly requested a sentence six remand. But even if he had, his post-hearing submission of medical records does not meet the requirements for remand.

For example, Foster has presented new evidence documenting multiple hospital visits for his asthma since 2009 plus evidence that he is now additionally under the care of a gastroenterologist (F. Mem. Exs. 1-6), attempting to show that the frequency of his asthma attacks now exceeds that required by the listing. But what controls is how frequent Foster's attacks were <u>before</u> the hearing, an issue that is not informed by evidence that he frequently sought treatment <u>after</u> the hearing (<u>Schmidt</u>, 395 F.3d at 742, citing cases). Those newly presented medical records, not presented to and considered by the ALJ, cannot be considered by this

Court and cannot be a basis for remand.

Foster's reply memorandum also attaches numerous medical records documenting his condition before the hearing date (F. R. Mem. Exs. 1-2). But those records were already part of the administrative record and were already under ALJ Harmon's consideration, as is evidenced by the fact that they already contain the page numbers of the administrative record. Hence those records are not "new evidence" and must be viewed as having been considered with the rest of the already-existing administrative record.

Foster also alludes to records from Dr. John Kelsey, but he says those records are unobtainable due to Dr. Kelsey's career change (F. R. Mem. 3-4 and Ex. 3). Foster adds that "Dr. Kelsey did not know how Plaintiff could obtain those medical records of his visits" (id. at 4). This Court cannot make a guess about what medical records that have never been produced may or may not say and if it is true that the records are still unavailable, there is obviously nothing for this Court (or for the ALJ earlier) to consider.

### Ineffective Assistance of Counsel

Foster makes the additional argument that he received inadequate representation from his attorney because the latter "had me conducting all research for case [sic] including obtaining hospital records" and was "very unresponsive to numerous phone calls from me during his representation and also moved his office several times during the period he represented me" (F. Mem. 2). Foster adds that he was told to obtain records only from Little Company of Mary Hospital, that he

was unable to obtain those records due to insufficient funds and that his attorney

"used only what I had in possession therefore medical records were inadequate to

support proof of disability" (id.).

But in fact the administrative record contains records from many sources,

including Dr. Antony (R. 238-44, 273-95), St. Margaret Mercy Healthcare Center

(R. 301-09), Roseland Community Hospital (R. 257-66) and Palos Community

Hospital (R. 322-23, 338-41). While "[t]he quality of representation may also be the

basis for remand" (Smith v. Sec'y of Health, Educ. & Welfare, 587 F.2d 857, 860

(7th Cir. 1978)), Foster does not point to any specific medical records that should

have been in the record, and he presents no additional evidence to show that he was

prejudiced by any action or inaction of counsel. Remand is therefore not warranted.

## Grounds for Decision

As for the ALJ decision itself, Foster presents two main attacks: (1) that ALJ

Harmon's finding that Foster did not meet Listing 3.03 was incorrect because it did

not properly take into account the frequency of his asthma attacks and (2) that ALJ

Harmon's consideration of VE Hamersma's testimony was flawed because he did

not properly take into account Foster's asthma symptoms and his resulting poor

work attendance. As there is substantial evidence to support ALJ Harmon's

decision on both these grounds, neither -- either singly or in combination -- can be

the basis for summary judgment in Foster's favor.

ALJ Harmon's decision as to the frequency of Foster's attacks was reasonable

and well-supported. After noting that Listing 3.03B required physician

- 13 -

intervention at least 6 times per year or hospitalization at least 3 times per year, ALJ Harmon found there was no evidence documenting asthma attacks of that frequency (R. 12-13). ALJ Harmon also noted that only in the months immediately preceding the hearing were there emergency room visits with any real frequency (R. 13). Later in his decision ALJ Harmon noted that Dr. Antony's treatment notes documented "relatively infrequent" visits (roughly 27 in an 11 year span)[6] and that there were "significant gaps" in Foster's history of treatment, including a total absence of asthma-related visits in 2007 and 2008 (R. 14).

ALJ Harmon did take note of Foster's asthma-related emergency room visits, but he ultimately found that "his relatively infrequent visits and his conservative treatment" did not support the alleged severity of his symptoms and limitations (R. 14-15). ALJ Harmon also found reason in Dr. Patil's examination, Dr. Cavanagh's testimony and Foster's own testimony to support his decision (R. 15-16).

Although ALJ Harmon discredited the opinion of Foster's treating physician Dr. Antony, his reasons for doing so were adequately laid out (contrast <u>Jelinek v. Astrue</u>, 662 F.3d 805, 811 (7th Cir. 2011)). In sum, ALJ Harmon's decision on the severity of Foster's symptoms and resulting limitations was well-supported by

---

[6] This Court notes as to Foster's visits to Dr. Antony that Dr. Cavanaugh's count (23 visits) differs slightly from ALJ Harmon's count (27 visits). It is unclear what the origin of that discrepancy may be, but under either version Foster's attacks do not meet the frequency required in the listing, and ALJ Harmon's analysis would withstand review under either number.

substantial evidence.

ALJ Harmon's use of the VE's testimony was also supported by substantial evidence. ALJ Harmon credited VE Hamersma's determination that Foster could perform no past relevant work but that he could adapt to certain other jobs such as hand packer, general laborer or inspector (R. 17-18). As might be expected, Foster disagrees with that determination and argues that his asthma symptoms prevent him from engaging in such work. But as already discussed, ALJ Harmon had ample support for his determination that Foster's asthma was not as debilitating as alleged, and Foster gives no other reason that VE Hamersma's testimony should be discredited.

## Conclusion

As already explained, this Court cannot step in and substitute its own judgment for that of the ALJ. When there is substantial evidence to support the ALJ's decision, it must be affirmed. Accordingly Foster's motion for summary judgment is denied, while Commissioner's cross-motion is granted. This action is dismissed with prejudice.

_____

Milton I. Shadur
Senior United States District Judge

Date: September 27, 2012

- 15 -